## 172.  KINARD v. THE STATE.

POWELL, J.  1. The accusation was sufficient, as against the demurrers of the defendant.

2. It is good ground of challenge to a juror in a city court, if the objection be timely made, that such juror served upon the jury in the same court at the next preceding term.

3. Upon the trial of a person charged with cheating and swindling by making false representations as to the ownership of property, claim affidavits, bonds, etc., filed by third persons to a levy upon certain property, as the property of the defendant, are not admissible in evidence.

4. Certified copies of duly recorded instruments shown to be in the possession of the defendant are admissible in evidence against him, in a criminal case, as against the objection that the original is the highest evidence, unless he voluntarily offers to produce the originals. *Farmer* v. *State*, 100 *Ga.* 41.

5. The evidence in this case is, as a matter of law, insufficient to sustain the verdict.                                              *Judgment reversed.*

Certiorari, from Worth superior court—Judge Spence. December 12, 1906.

Argued January 28,—Decided February 5, 1907.

C. L. Kinard was tried in the city court of Sylvester, before Judge Park. The accusation (founded upon the affidavit of G. C. Ford and J. O. Holloman, to the best of their knowledge and belief) alleged that C. L. Kinard, on February 8, 1904, falsely and fraudulently represented to Ford & Holloman that he had rented land enough for twelve plows from J. R. Hill, and land enough for five plows from T. J. Pinson, and was going to run seventeen plows that year; that he had and owned seventeen mules that were unincumbered, there being nothing against them, that had cost him an average of $100 each; that he owned and had in his own name and right good and solvent notes enough to make him well worth $4,000; and thereupon obtained a credit from Ford & Holloman for commercial fertilizers to the amount and value of $1,579.16, and thereby caused Ford & Holloman loss and injury to that amount and value. The accused demurred on the following grounds: (1) The accusation is not based on a positive affidavit, as prescribed by the act creating the city court [Acts 1905, p. 378]. (2) It fails to allege that defendant made or procured another to make any false representations to Ford & Holloman, with intent to obtain from them any money or other thing of value. (3) It does not allege any deceitful means or

artful practices made or used by defendant before obtaining the fertilizers. (4) It does not appear that any representation was made prior to or at the time of obtaining the fertilizers. (5) It does not allege with sufficient particularity the place of the commission of the alleged crime, merely alleging that it was in Worth county, without putting defendant on notice of the particular place, without enabling him to prepare his defense, and especially failing to enable him to prepare a defense of alibi. (6) It nowhere sets forth that any fraudulent representations were made by him to any person for the purpose and with intent of defrauding Ford & Holloman. (7) It is insufficient, as a whole, to be the basis of a valid conviction. (8, 11) The representation, that he "was going to run seventeen plows that year," was of not a past or existing fact, but of an act contemplated to be done in the future, and could not be the basis of an accusation charging him with fraudulently obtaining credit; and it does not appear that he entertained a different intention when the statement was made, nor whether, if he did intend to run this number of plows, he had good cause for changing his mind and not doing so. (9) It is not alleged that his representations misled or deceived, or caused Ford & Holloman to part with their property to their injury, or in what way they were injured. (10) It is not alleged that they parted with the fertilizers to him on the representations he made to them, nor that they were in any way injured in consequence of the representations. (12) It is not alleged how much Ford & Holloman estimated and considered the proposed crop to be worth, nor how much Kinard's rent contract was worth from Hill and Pinson, nor what amount of solvent notes he claimed he owned; the allegation being that all of the property rights enumerated in the affidavit, according to the judgment of Ford & Holloman, were worth $4,000, without specifying the value of Kinard's property going to make up this total: for which reason he is not notified of what he is expected to meet. (13) It does not appear what amount, or that any amount, of property or any other thing of value was parted with by Ford & Holloman upon the representations made to them.

This demurrer having been overruled, evidence was introduced, under which, together with the judge's charge, the jury found the accused guilty. On certiorari the conviction was sustained, and

the accused excepted. His assignments of error are shown by the headnotes in connection with the following statement of what appears from the evidence: As a basis of credit for fertilizers sold to him by Ford & Holloman, at the date and in the county alleged, the accused stated to Holloman, that he had seventeen good mules unencumbered on which he did not owe a cent; that he had rented from J. R. Hill a twelve-horse farm and from T. J. Pinson a five-horse farm; and that he had good notes and other property to the amount of $2,300, the notes being with the Sylvester Banking Company for collection. Ford & Holloman extended him the credit, relying on this statement. He has paid them nothing, and they have lost between fifteen and sixteen hundred dollars. He rented from T. J. Pinson a two-mule farm, eighty or ninety acres, in 1904, and paid him the rent. In the same year he rented from J. R. Hill 490 acres of cultivatable land, which could be cultivated with twelve plows; there were twelve or fourteen mules on this land, eight wage hands and three croppers. He planted all the land, but could not work it on account of labor failing; there was sickness among the laborers and in his family. He made a poor crop of everything. Walters, his overseer on the Hill place, testified, that he ran a twelve-horse farm there, and there was a cropper who started a two-horse farm, but he quit in the spring, and they could not get labor to work the crop. They made about 150 bushels of corn with the thirteen plows, and about sixty bales of cotton on both places rented.

Over objection, a copy of a mortgage from the accused to the First National Bank of Sylvester, for $315.50 principal, dated February 5, 1904, and covering eight mules, was admitted in evidence. The objection was on the grounds, that the original mortgage had not been satisfactorily accounted for; that the mortgage appeared to have been marked paid, and canceled of record; and that it was irrelevant. The cashier of the bank testified that the mortgage was marked paid and turned over to the accused on his giving the bank a draft for the amount of it, which draft was dishonored on presentation. It also was put in evidence. The mortgage was foreclosed, and five mules were levied on to satisfy the execution issued thereunder. There was a further objection to the admission of the draft and of the testimony concerning it, and of the evidence as to the foreclosure of the mortgage, upon the

ground that the same was irrelevant. Objection was likewise made to evidence concerning a mortgage on mules, made in 1903, by the accused to Sam Farkas. Another objection that was overruled was to the introduction of claim affidavits and bonds interposed by J. F. Kinard, T. M. Wilder, and C. W. Hill to the levy of the mortgage fi. fa., before mentioned, on certain mules, the ground of objection being that the evidence was irrelevant.

The testimony shows, that in 1904 the accused had with the Sylvester Banking Company notes to the amount of $1,800 or $2,000, though in February they had been placed in the hands of an attorney for collection. There were $2,300 worth of them at first, but the bank had collected some of them. They had been pledged to the bank in 1903, but this pledge had been released by substitution of securities. Most of these notes stood in the name of J. F. Kinard & Sons, but, upon a dissolution of the partnership on distribution of assets, these notes had been given to the accused. At the First National Bank of Sylvester he had between $1,000 and $2,000 worth of similar notes. It appeared from the testimony that he had about eighteen mules in February, 1904; but it did not appear that any of the mortgaged mules, already mentioned, were included in this number. He had been engaged during that season in buying and selling mules.

Further objection was made to the admission of the following evidence, on the ground that it was irrelevant and immaterial: The sheriff testified, as to his efforts to find the mules described in the mortgage fi. fa. already mentioned, that he found four of the mules at T. M. Wilder's place and one at G. F. Kinard's place, but his further search did not find any. An officer of the Sylvester Banking Company testified that the consolidated note of J. F., G. F., and C. L. Kinard, held by that bank, on February 8, 1904, was for $4,048.36. J. F. Kinard testified that he paid at least $3,000 of the note made to the Sylvester Banking Company with his own money; and in answer to the question whether the defendant was worth $4,000 on February 8, 1904, he answered, "If he had it, I did not know where it was at."

*Payton & Hay,* for plaintiff in error.

*W. E. Wooten, solicitor-general, J. H. Tipton,* contra.